## HUNTER *v.* BLOSSER.

Brokers—Commissions—Directed Verdict.

Where plaintiff sued for broker's commissions for the sale of defendant's business, which consisted of a barber shop and a laundry agency, which sale was not consummated because the buyer, a laundry company, refused to assume defendant's agency contract with another laundry, plaintiff did not procure a purchaser able, ready and willing to buy, and a verdict should have been directed for defendant.

Error to Wayne; Collingwood, J., presiding. Sub-

mitted October 18, 1916. (Docket No. 7.) Decided December 21, 1916.

Assumpsit in justice's court by Charles C. Hunter against Dura A. Blosser for broker's commissions. From a judgment for defendant, plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed; no new trial granted.

*Rowland M. Connor,* for appellant.

*Chas. E. Duffy,* for appellee.

The written evidence in the case is here set out:

"Sept. 24, 1914.

"To C. C. Hunter,
    "482 McClellan Ave.:
    "For and in consideration of one dollar ($1.00), the receipt of which is acknowledged, I hereby appoint you exclusive agent to make sale of the property described as stock, fixtures, and lease of business located No. 330 Woodward Ave., for the price of $5,500.00, upon the following terms: $100 cash: $5,400.00 in deferred payments as follows: Nineteen hundred ($1,900) dollars on delivery of the above-described property and lease, and the balance to be paid in monthly installments of one hundred fifty ($150) dollars or more. And you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for the sale on my behalf.

"In case the above-described property is sold or disposed of within the time specified, I agree to make the purchaser a proper conveyance to the same; and it is further agreed that you shall have and may retain from the first proceeds arising from such sale $500.00 commission on the above price; and in case said property is sold within said time either through me or any other person, then and in that case I promise to pay you $500 on the whole amount for which said property may be sold.

[Signed]   "D. A. Blosser.

"Witness:
    "Henry J. Prinz."

"Agreement made this 24th day of September, A. D. 1914, between D. A. Blosser hereinafter described as the seller, and C. C. Hunter, hereinafter described as the purchaser, witnesseth that the seller agrees to sell and the purchaser agrees to purchase the business known as the Bartlette Laundry and Barber Shop, located at 330 Woodward Ave., with all the stock and fixtures therein, according to inventory attached hereto and made part of this agreement. This transfer to include the business of branch laundry office located at —— Woodward Ave., known as the 'Addison Smoke Shop,' or any other branch office or business in which said D. A. Blosser is in any way connected. Purchaser to receive all commissions on uncalled for laundry on date of transfer. The price is fifty-five hundred ($5,-500.00) dollars on the following terms, viz.: One hundred ($100.00) dollars on signing this agreement, the receipt of which is hereby acknowledged, nineteen hundred ($1,900.00) dollars on delivery of the above-described property and lease, and the balance to be paid in monthly installments of one hundred fifty ($150.00) dollars or more. Seller hereby agrees to grant and convey to purchaser a clear bill of sale to the above described property and lease all shortage claims, if any, to be paid for by said D. A. Blosser. Said purchase to be closed on or before Monday, September 28th, 1914.

"The seller further agrees that he shall not enter in any manner, shape, or form, or connect himself with any laundry agency, soliciting of laundry, or barber business, in the city of Detroit, or Highland Park, Wayne county, Michigan, from date hereof for a period of five (5) years, without the written consent from the aforesaid purchaser under forfeiture of the sum of five thousand ($5,000.00) dollars, payable on demand.

"Witness our hands and seals this 24th day of September, A. D. 1914.

"D. A. BLOSSER.
"C. C. HUNTER.

"HENRY J. PRINZ."

"I hereby assign all my right and title in above to Palace Model Laundry Co., of Detroit.

"Detroit, Mich., Sept. 25/14.

"C. C. HUNTER."

"Detroit, Sept. 28/14.

"We hereby agree to extend the date for delivery and settlement of the agreement on the other side until 29th Sept., 1914, instead of Sept. 28, 1914.

"D. A. BLOSSER.
"PALACE MODEL LDY. CO.
"D. K. McNAUGHTON, Pres."

"5 chairs barber
2 Davenport shoe shine stands
6 high-back chairs
4 wall case mirrors
1 mirror 30x72
2   "     18x40
1   "     24x50
Barber's basin
1 ceiling fan
1 small fan
3 umbrella stands
Heater & boiler
Clock
10 small lights
4 triple   "
2 cash registers
2 massage machines
10-ft. showcase
Outside lamp
Outside sign
Awning
Tobacco & cigar to amount of
1 showcase in cellar
And all other stock and fixtures on hand."

"This agreement made and entered into this 19th day of September, A. D. 1914, by and between the Dispatch Laundry Company, a Michigan corporation, of the city of Detroit, Michigan, party of the first part, and Dura A. Blosser, of the same place party of the second part, witnesseth: The said first party is now engaged in the laundry business at 107-115 Larned St. West, Detroit, Michigan, and said second party is engaged in the laundry agency business in the city of Detroit, at No. 330 Woodward Ave., operating at that address what is known as Bartlette's Laundry, and has also established a branch of his said business in the Addison Assembly Hall, Detroit, Michigan.

"Now, therefore, it is mutually agreed as follows:

"(1) The second party agrees that for the term of one year from and after September 19, 1914, he will give to the first party all the laundry work that is done through his said branches at 330 Woodward Ave. and Addison Assembly Hall, Detroit; that he will not employ any other laundry to do any of said work and will not represent any other laundry or allow any other laundry to be represented in his said branches.

"(2) Said second party agrees to send the laundry work aforesaid to the plant of said first party, and to pay all bills for work promptly, at least once each week, and to account to first party and pay over any and all amounts due to said first party at least once a week.

"(3) The first party agrees to maintain the present quality of its service and the quality of its laundry work, but it is expressly agreed that the second party shall not have the right to declare this contract annulled or abrogated on account of the quality of the work or service of the first party; nor shall it be deemed a breach sufficient to avoid the contract if the work or quality or service is not satisfactory to the second party.

"(4) In consideration of the premises the first party agrees to pay said second party a commission of 37½ per cent. on the amount of business turned over by the second party to the first party, and guarantees this rate of commission for the term of this contract.

"(5) This agreement is expressly made binding on the successors and assigns of the parties hereto.

"In witness whereof the parties have hereunto set their hands and seals this day and year first above written.

"DISPATCH LAUNDRY CO. [L. S.]<br>
"J. HENDRICK, Mgr.<br>
"D. A. BLOSSER.     [L. S.]

"In presence of RALPH S. POTTER."

Explanatory thereof, and undisputed, is testimony tending to prove that, as plaintiff knew, defendant had in fact no laundry, but had a laundry agency. He solicited, collected, put out to be laundered, and delivered

194—Mich.—11.

garments. He was himself the patron of a laundry, or of laundries, receiving a commission upon the business he furnished. The Palace Model Laundry Company desired to acquire defendant's business, and employed plaintiff to secure it, the company not to appear in the transaction unless it was successfully closed. He was told that, if he could buy it and sell it to the Palace Model Laundry Company, it would buy it through him. He was the medium by which the company hoped to acquire defendant's business, and plaintiff was given a maximum price of $5,500; he to get his commission from the seller. After assigning his agreement to purchase, plaintiff introduced to defendant his principal, the Palace Model Laundry Company, and investigation disclosed the existence of the agreement between defendant and the Dispatch Laundry Company, an agreement which defendant evidently regarded as an advantageous one. A release from this was sought by defendant, at the request of the Palace Model Laundry Company, and was not secured. Thereupon and therefore the Palace Model Laundry Company declined to proceed in the transaction. No one proceeded, although defendant was willing to do so, and plaintiff sued defendant for his commission of $500, and upon the trial had a verdict and judgment for this sum. Both parties asked for a directed verdict, and each now claims that a verdict should have been directed in his favor. Neither agrees with the theory of the charge. The court left to the jury the question whether the commission agreement was made before the agreement to sell to plaintiff, advising the jury that if the commission agreement was in fact first made, and the Palace Model Laundry Company was able, ready, and willing—

"to buy that property, and did not buy it because of the act that Mr. Blosser had performed in selling his business to some one else so he could not sell it, then Mr. Hunter is entitled to his commission just as if he had sold it. *   *   *"

OSTRANDER, J. (*after stating the facts*). Defendant had title to whatever he offered to sell. No question is raised respecting his title to the specific articles described in the inventory, and none to his title to and ownership of his *business*. Plaintiff says he first made his contract of agency, then his agreement to purchase. There is no testimony tending to prove that plaintiff produced a purchaser who would buy in accordance with the agency contract.

Plaintiff himself, the agency contract being in existence, agreed to buy, not only what the agency contract described, but more, and also the promise of the defendant vendor not to engage for five years in the immediate vicinity in a competitive business. In this contract the agent is a principal, and as such he paid $100 of the purchase price. He has not offered to perform his agreement, nor any proof that he is able and willing to do so. He sought to secure the business and property for another, who refused to take it, although it had succeeded, as assignee, to his rights.

Let it be assumed that it was understood between plaintiff and defendant that the agreement to sell and buy which was executed was a means merely to secure a sale to plaintiff's undisclosed principal, the Palace Model Laundry Company. In this view it is not material whether the agency agreement or the sales agreement was first made or whether they were each a part of a single transaction. The agency agreement itself bears convincing evidence that it was last prepared, because in two places therein it refers to a time limit not therein specified for making a sale. The sales agreement alone specifies the limitation.

Let it also be assumed that such a sale as defendant desired to make, and, if made, such as he was willing to pay the stipulated commission for having made, was not made because his contract with the Dispatch Laundry Company was outstanding. Has the plaintiff

earned the commission? The answer must be "No." No act of defendant prevented the sale of his business. He had not, as the court in the charge assumed, already sold it to another. There was no lien or incumbrance upon the business or upon the specific property agreed to be sold. It does not appear that the contract with the Dispatch Laundry Company was not a most advantageous one for the *business*. The purchaser proposed by the plaintiff did not wish to buy the business as it was. It is said for appellee that no laundry company would want to buy the business with this contract outstanding. But plaintiff was not limited to a sale to a laundry company. It might be argued as well that no laundry company would wish to buy a barber shop and fixtures and no barber would care to buy a laundry agency, and that, if any but a laundry concern did buy it, the contract for laundry work would be regarded as a valuable asset of the business. Defendant had a barber shop, furniture therefor, a laundry agency, and, in a way, a laundry business. That was his business. For *it* plaintiff has not procured a purchaser, unless he himself is to be regarded as such. A verdict should have been directed for defendant.

The judgment must be reversed, and there seems to be no reason for ordering a new trial.

Stone, C. J., and Kuhn, Bird, Moore, Steere, and Brooke, JJ., concurred. Person, J., did not sit.